UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY P.,<br><br>                                Plaintiff,<br><br>v.<br><br>MARTIN O'MALLEY, Commissioner of Social Security,[1]<br><br>                                Defendant. | Case No.:  3:23-cv-00563-AHG<br><br>**ORDER RESOLVING JOINT MOTION FOR JUDICIAL REVIEW**<br><br>**[ECF No. 13]** |

Plaintiff Gary P. ("Plaintiff") filed this action on March 29, 2023, seeking review of the Commissioner of Social Security's ("Commissioner" or "Defendant") denial of his application for Supplemental Social Security Income. ECF No. 1. The parties consented to

---

[1] Martin O'Malley became the Commissioner of the Social Security Administration on December 20, 2023. Although Plaintiff originally brought this action against Former Acting Commissioner Kilolo Kijakazi, this case may properly proceed against Martin O'Malley pursuant to 42 U.S.C. § 405(g).

proceed before a Magistrate Judge on April 10, 2023. ECF No. 7; General Order 707 (S.D. Cal. Apr. 12, 2019). Pursuant to the Court's Order, the parties filed a Joint Motion for Judicial Review on October 25, 2023, stating their positions on the disputed issues in the case. ECF No. 13. The Court finds the matter suitable for submission without oral argument pursuant to CivLR 7.1(d)(1).

For the reasons set forth below, the Court **GRANTS** the Joint Motion, **REVERSES** the Commissioner's denial of benefits to Plaintiff, and **REMANDS** this action for calculation and award of benefits to Plaintiff.

## I.   PROCEDURAL BACKGROUND

Plaintiff was born on November 20, 1956. AR 106. On July 21, 2017, the Commissioner found Plaintiff to be disabled beginning June 3, 2013. AR 154. Following that determination, Plaintiff worked as a courier and driver beginning sometime in 2019. AR 40. Plaintiff stopped working after suffering an injury on the job. AR 326.

On February 18, 2021, Plaintiff filed an application for Supplemental Security Income, alleging a disability onset date of June 18, 2017. AR 29. On April 6, 2022, following a hearing on January 12, 2022, an administrative law judge ("ALJ") issued a decision denying Plaintiff's application. AR 40, 98. Plaintiff requested review of the decision. The Appeals Council denied Plaintiff's request for review on February 7, 2023. AR 1. When the Appeals Council denied that request, the ALJ's decision became the final decision of the Commissioner. *See Sam v. Astrue*, 550 F.3d 808, 810 (9th Cir. 2008).

## II.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010).

Substantial evidence means "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "'Where

evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Burch v. Barnhart*, 400 F.3d 676. 679 (9th Cir. 2005)). However, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (internal quotation marks omitted). The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Id.*; *see also SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").

## III.   SUMMARY OF ALJ'S FINDINGS

An ALJ follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. § 416.920; *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999). In the first step, an ALJ must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006). Here, at step one, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since the application date of February 18, 2021. AR 32.

At step two, an ALJ must determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. *Id.* Here, at step two, the ALJ determined that Plaintiff has the following severe impairments: cervical and lumber spinal stenosis, cervical and lumbar spondylosis, and stage III chronic kidney disease. AR 32. The ALJ also determined that Plaintiff has the following nonsevere impairments: obesity, hepatitis C, allergic rhinitis, hypertension, and major depressive disorder. AR 32.

At step three, an ALJ must determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listings") set

3:23-cv-00563-AHG

forth at 20 C.F.R. § 404, subpart P, appendix 1; if so, disability is established and benefits are awarded. *Lounsberry*, 468 F.3d at 1114. Here, the ALJ determined that Plaintiff's severe impairments, separately or in combination, do not meet or medically equal an impairment in the Listings. AR 34.

Between step three and step four, an ALJ must determine the claimant's residual functional capacity ("RFC"). An RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." Soc. Sec. Ruling ("SSR")[2] 96-9p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996). It reflects the most a claimant can do despite his limitations. *See Smolen v. Chater*, 80 F.3d 1273, 1291 (9th Cir. 1996). An RFC assessment must include an individual's functional limitations or restrictions as a result of all of his impairments – even those that are not severe (*see* 20 C.F.R. § 416.945(a)(1)–(2), (e)) – and must assess his "work-related abilities on a function-by-function basis." SSR 96-9p, 1996 WL 374184, at *1; *see also Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) ("an RFC that fails to take into account a claimant's limitations is defective"). The RFC assessment is an administrative finding reserved to the ALJ. 20 C.F.R. § 416.927(d)(2). It must be based on all of the relevant evidence, including the diagnoses, treatment, observations, and opinions of medical sources, such as treating and examining physicians. 20 C.F.R. § 416.945. Here, the ALJ assessed that Plaintiff's RFC allows him "to perform light work as defined in 20 CFR 416.967(b) except the claimant can occasionally climb ramps and stairs; can never climb ladders, ropes, or scaffolds; and can occasionally balance, stoop, kneel, crouch, and crawl." AR 34.

---

[2] "SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (citations omitted).

At step four of the disability analysis, if an ALJ determines a claimant has sufficient RFC to perform past relevant work, the claimant is not disabled and the claim is denied. *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992). The claimant has the burden of proving that he is unable to perform past relevant work at step four. *Id.* If the claimant meets this burden, a *prima facie* case of disability is established. *Id.* Here, at step four, the ALJ determined that Plaintiff is able to perform his past relevant work as a courier and driver.[3] AR 39. Accordingly, the ALJ determined that Plaintiff was not disabled at any time since February 18, 2021, obviating the need to proceed to step five. AR 40.

## IV.   ISSUE NO. 1: WHETHER THE ALJ ERRED IN DISCREDITING PLAINTIFF'S TESTIMONY

Plaintiff contends that the ALJ erred when he rejected Plaintiff's statements regarding the severity and extent of his symptoms without stating specific, clear and convincing reasons for doing so. Plaintiff argues that the ALJ ignored objective evidence in the record that supports Plaintiff's subjective complaints, and instead focused improperly on portions of the medical record that indicate normal functioning but are unrelated to Plaintiff's disabling complaints. Plaintiff argues that this was harmful error,

---

[3] Of note, during the hearing, the vocational expert identified three relevant past occupations:

1. Courier: Dictionary of Occupational Titles ("DOT") 230.663-010, Specific Vocational Preparation ("SVP") 2, which is unskilled and performed at the light exertional level. AR 118.
2. Driver: DOT 359.673.010, SVP 3, which is semi-skilled and performed at the light exertional level. AR 118.
3. Van Driver: DOT 913.663-018, SVP 3, which is semi-skilled and performed at the medium exertional level, as generally performed and actually performed. AR 119–20.

The ALJ only listed courier and driver in his opinion. AR 40. However, this omission is harmless because ALJ formatted Plaintiff's RFC to include only the light exertional level, and working as a van driver requires medium exertion.

and the Court should remand for an award of benefits to Plaintiff or, alternatively, remand for further proceedings.

Defendant denies that the ALJ erred in discrediting Plaintiff's testimony and argues that the medical evidence does not support the claimed severity of Plaintiff's symptoms and limitations. Defendant also argues that other evidence in the record does not support Plaintiff's testimony, including normal findings at physical examinations, inconsistencies regarding side effects from Plaintiff's medications, and Plaintiff's daily activities. Alternatively, if the Court finds error, Defendant contends that it would be improper to remand for an award of benefits because the record does not demonstrate that Plaintiff is disabled.

For the reasons set forth below, the Court finds that the ALJ committed reversible error in evaluating Plaintiff's statements.

**A. Legal Standard**

An ALJ evaluating a claimant's subjective complaints must follow a two-step inquiry. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). First, an ALJ must assess whether there is objective medical evidence to support the complaints. *Id.* If that is the case, and there is no evidence of malingering, "the ALJ can only reject the claimant's testimony about the severity of the symptoms if he gives 'specific, clear and convincing reasons' for the rejection." *Id.* (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)). An ALJ must "specifically identify the testimony she or he finds not to be credible ... and explain what evidence undermines that testimony." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014)). An ALJ's decision must be "sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not 'arbitrarily discredit a claimant's testimony regarding pain.'" *Bunnell v. Sullivan*, 947

F.2d 341, 345–46 (9th Cir. 1991).[4] "[A]n ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

If the ALJ fails to meet these requirements for specificity, the Court is not free to fill in the gaps. *Lambert*, 980 F.3d at 1278. It is solely within the ALJ's province to assess the credibility of the claimant's testimony. *Id.* A court is therefore "constrained to review the reasons the ALJ asserts." *Id.* (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)); *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).

### B. Plaintiff's Statements

The ALJ considered Plaintiff's statements regarding the severity of his symptoms from his Function Report and his testimony at the January 12, 2022, hearing. In the Function Report dated March 17, 2021, Plaintiff noted that he could not work because the pain from his medical conditions requires regular medication and rest on average of ten days or more per month. AR 353. Plaintiff stated that his pain medication "causes drowsiness and dizziness that prevents [him] from driving a commercial vehicle." AR 353. Plaintiff relies on a friend to do household chores. AR 355. Plaintiff shops once a month.

---

[4] On March 28, 2016, the Social Security Administration issued new guidance regarding how to evaluate a claimant's subjective symptom testimony. *See* SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016); 2017 WL 5180304 (Oct. 25, 2017) (clarifying SSR 16-3p). Additionally, effective March 27, 2017, the Social Security Administration updated the relevant agency regulations regarding how a claimant's symptoms are evaluated. *See* 20 C.F.R. § 416.929. Although the ALJ's opinion was issued after these changes, the jurisprudence governing the applicable two-step inquiry remains good law. *See, e.g.*, *Campbell v. Saul*, 848 F. App'x 718, 721 (9th Cir. 2021) (applying the two-step inquiry in a recent case appealing an ALJ's decision from 2018, in which the newer regulations were applied); *Vooge v. Saul*, 840 F. App'x 253, 254 (9th Cir. 2021) (same, in case involving an ALJ's opinion issued in January 2019). *See also Trevizo v. Berryhill*, 871 F.3d 664, 678 n.5 (9th Cir. 2017) (noting SSR 16-3p is consistent with existing Ninth Circuit precedent regarding the ALJ's assessments of an individual's testimony).

AR 356. Plaintiff is able to handle his financial needs. AR 356. Plaintiff takes Gabapentin and Norco, and reports that these medications make him drowsy and dizzy. AR 360.

The ALJ held a telephonic hearing on January 12, 2022. AR 98. Plaintiff was not represented by counsel at the hearing. AR 103. Plaintiff testified that his back pain bothers him the most. AR 110. It is "always there." AR 110. He has back spasms about once a month, which are only resolved with complete rest and pain medication. AR 110. Plaintiff feels depressed on a daily basis. AR 113. Plaintiff is able to care for himself, but has a friend who cooks for him. AR 114. His friend also handles the shopping, picking up prescriptions, and household cleaning. AR 115. Plaintiff only drives short distances because of concerns about falling asleep while driving. AR 115. Plaintiff has to shift positions frequently while driving, approximately every two minutes. AR 115. Plaintiff can only stand for a minute or two before his leg gets numb. AR 115. Plaintiff follows his doctor's directions not to lift anything over 20 pounds, and he is careful to use his legs when bending over to pick things up because of past issues. AR 116.

### C. The ALJ Erred in Rejecting Plaintiff's Testimony

In evaluating the Plaintiff's symptom testimony, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of his symptoms, satisfying the first step of the inquiry. AR 35. The ALJ found no evidence of malingering. The ALJ was therefore required to state "specific, clear and convincing reasons, supported by substantial evidence from the administrative record" for rejecting Plaintiff's testimony concerning the intensity, persistence, and limiting effects of his symptoms. *Austin v. Saul*, 840 F. App'x 899, 901 (9th Cir. 2020) (quoting *Marsh v. Colvin*, 792 F.3d 1170, 1173 n.2 (9th Cir. 2015) (punctuation omitted)).

### 1. The ALJ's boilerplate statement regarding inconsistencies with the medical evidence does not constitute a clear and convincing reason for rejecting Plaintiff's testimony.

An ALJ is required to "specifically identify the testimony ... he finds not to be credible and ... explain what evidence undermines the testimony." *Holohan*, 246 F.3d at

1208. Here, the ALJ made a boilerplate statement regarding Plaintiff's testimony that is commonly found in ALJ decisions:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

AR 35. This language is too general and boilerplate to satisfy the requirement that an ALJ specifically identify the testimony of the claimant that should be discredited. *See, e.g.*, *Lambert*, 980 F.3d at 1277 (finding that identical boilerplate language was insufficient to meet the ALJ's burden); *Burrell*, 775 F.3d at 1138 (general statement that testimony is "inconsistent in some unspecified way" is insufficient); *Treichler*, 775 F.3d at 1103 (noting that identical boilerplate statement was insufficient because the "ALJ must identify the testimony that was not credible"). The Court will disregard this boilerplate statement and evaluate the ALJ's decision only with respect to specific testimony he identified as inconsistent with the record. The Court addresses the specific areas of testimony identified by the ALJ below.

## 2. The ALJ failed to provide a clear and convincing reason for rejecting Plaintiff's testimony about the need to change positions frequently.

The ALJ specifically found that Plaintiff's testimony at the hearing "that he can only stand for a minute or [t]wo or that he needs to change position ever [sic] 2 minutes" is inconsistent with medical records indicating that Plaintiff "maintained full strength in the lower extremities … and in the upper extremities except for some exams with mild or trace weakness in differing muscle groups in the right upper extremity" and records showing that Plaintiff had "an intact gait with no assistive device." AR 38. The ALJ did not provide a citation to the hearing testimony to which he was referring, but this testimony from the hearing is closest to the ALJ's description:

> Q.   What would you estimate is the longest you can sit for either in a car driving or just at a table before you have to shift position?

A.      Actually I be shifting quite often. I'd say every two minutes or maybe I move, change a position or something.

Q.      What about standing? How long can you stand for?

A.      Oh, if I like stand like say for a minute or so, my leg get numb, my right leg gets numb. And I have to remove it before it don't fall asleep.

AR 115–16.

The ALJ referred to the following medical records as inconsistent with this testimony, because they show that Plaintiff maintained full strength in the lower extremities: Exhibits D2F [AR 421–77]; D5F [AR 519–38]; and D7F [AR 576–622]. Although some of these medical records indicate that Plaintiff's examinations were largely normal with respect to his lower extremities, they do not provide clear and convincing reasons for discounting Plaintiff's testimony. Other medical records in the same exhibits show that Plaintiff had tenderness in his cervical spine and lumbar spine, moderate to severe decreases in range of motion, and positive Spurling tests for pain consistently from July 2020 through April 2021. Ex. D2F [AR 429, 439, 448, 456, 464, 473]; Ex. D7F [AR 580, 591, 600, 609, 618]. A medical evaluation by Michael P. Kelly, D.C., indicates that normal strength in the lower extremities is not inconsistent with Plaintiff's complaints of pain. AR 533. Even though Plaintiff "did not have any trouble performing the lower extremity muscle test" with Dr. Kelly, Plaintiff still had symptoms of "tingling and numbness down the legs, primarily down the right leg," that are "off and on throughout the day and are aggravating at best." AR 533. Plaintiff's medical records from visits to the Sage Pain & Wellness Institute further confirm this. The treatment notes indicate that even when Plaintiff had normal examinations of his lower extremities, his pain level would increase. AR 580–81, 591 ("LOWER EXTREMITIES: Presentation normal: Yes. … Physical examination of the affected body part is conducted today, revealing the findings are indicating pain level has increased but no other change, consistent with previous examination."). And, as the ALJ acknowledged, the record contains several MRI reports

that confirm that Plaintiff has "cervical and lumbar spinal stenosis and cervical and lumbar spondylosis." AR 36.

The ALJ's myopic focus on reports of normal strength in the lower extremities ignores the overall medical record that shows significant, objective medical evidence that supports Plaintiff's testimony. "While ALJs obviously must rely on examples to show why they do not believe that a claimant is credible, the data points they choose must *in fact* constitute examples of a broader development to satisfy the applicable 'clear and convincing' standard." *Garrison*, 759 F.3d at 1018 (emphasis in original). The ALJ provided no explanation for why a finding of normal strength in the lower extremity was a clear and convincing reason to disregard the other medical evidence in the record that supports Plaintiff's testimony.

The ALJ's reliance on medical records that show Plaintiff had full strength in the upper extremities is even more tenuous. Here, the ALJ relied on Exhibit D4F [AR 484–518] and Exhibit D5F [AR 519–38]. Exhibit D4F includes records from San Diego Orthopedic Associates Medical Group, Inc., related to Plaintiff's workers' compensation claim in 2020. AR 485. These records confirm tenderness at the base of Plaintiff's cervical spine and the midline of his lower lumbar spine, limited range of motion, trace weaknesses in the upper extremities, and diminished and symmetrical reflexes. AR 484–86, 494, 505. Exhibit 5F is a report of a medical evaluation by Dr. Kelly in December 2020. AR 520. Dr. Kelly's examination revealed restricted range of motion, tenderness of the cervical spine, and spasms in the lumbar spine. AR 530–31. These records do not provide clear and convincing evidence to reject Plaintiff's testimony; instead, they confirm that the medical records as a whole support Plaintiff's testimony. Moreover, the ALJ did not explain why strength in the upper extremities would have any bearing on Plaintiff's ability to stand, his experience of numbness while standing, or his need to change position frequently when sitting in a car or at a table.

The ALJ also contended that treatment notes from Exhibit D2F [AR 421–77]; Exhibit D6F [AR 539–75]; Exhibit D7F [AR 576–622]; Exhibit D8F [AR 623–41]; and

Exhibit D9F [AR 642–708] justified rejecting Plaintiff's testimony because they showed that Plaintiff had an intact gait with no assistive device. AR 38. This explanation also fails because it ignores other objective evidence, in the same treatment notes, that supports Plaintiff's testimony. Although many treatment notes reference "normal gait," *e.g.,* AR 439, 448, 473, other notes reflect issues with Plaintiff's gait. AR 436, 543. Even when Plaintiff's gait was normal, he was unable to complete toe or heel walk tests because of pain. *E.g.*, AR 544, 550, 557, 564.

None of the reasons stated by the ALJ for rejecting Plaintiff's testimony regarding his need to change positions meet the clear and convincing standard. The ALJ failed to provide any explanation for why certain normal findings in medical examinations would be inconsistent with Plaintiff's testimony, and the records contain a plethora of abnormal findings in the same medical examinations that support Plaintiff's testimony.

### 3. The ALJ failed to provide a clear and convincing reason for rejecting Plaintiff's testimony about the side effects of his medications.

The ALJ rejected Plaintiff's statement in his Function Report, Ex. D5E, that his medication "causes drowsiness and dizziness that prevents [him] from driving a commercial vehicle." AR 353. The ALJ contended that this statement was belied by treatment notes where Plaintiff "denied side effects to his medical sources" at Exhibit D2F and Exhibit D7F. Each of these treatment notes confirms that Plaintiff takes Norco and Gabapentin for pain, and that these prescriptions were deemed medically necessary. *E.g.*, AR 431, 435, 441, 450, 458. Each note also confirms that "The patient reports no adverse reactions or side effects with current medications." *E.g.*, AR 578, 589, 598, 607, 616. It is not clear, however, that the comments regarding side effects considered the drowsiness or dizziness that Plaintiff mentioned in his Function Report. Plaintiff did not work at all during the time period when the treatment notes were created, so Plaintiff may not have considered the drowsiness or dizziness to be adverse side effects at that time. Plaintiff did confirm in his doctor's visits that he does not drive when taking these medications. AR 436, 541. Norco is a strong opioid medication that is considered to be beyond "conservative"

treatment for pain. *See, e.g.*, *Bucknell v. Berryhill*, No. ED-CV-18-0261-AS, 2018 WL 6198459, at *4 (C.D. Cal. Nov. 27, 2018). It is common sense that drowsiness would be an expected side effect of a strong narcotic medication like Norco. *See, e.g.*, AR 364 ("Take 3 Gabapentin a day 800 MG. Causes drowsiness. Take 4 Norco a day that cause drowsiness."). The generic statements in the treatment notes regarding side effects do not squarely contradict Plaintiff's testimony that these medications prohibit him from driving a commercial vehicle, or provide clear and convincing reasons to reject Plaintiff's testimony.

### 4. Plaintiff's activities of daily living are not a clear and convincing reason to reject his testimony.

The ALJ stated that Plaintiff's activities of daily living are "generally consistent with a range of light work as in July 2020, the claim reported he [was] doing a home exercise program with walking and weight training" and "was able to drive, shop, and go out alone." AR 38. An ALJ is permitted to consider a claimant's daily activities when evaluating whether to credit his subjective statements regarding the persistence, intensity, and limiting effects of his symptoms. *See Burch*, 400 F.3d at 681 ("The ALJ was permitted to consider daily living activities in his credibility analysis. … [I]f a claimant engages in numerous daily activities involving skills that could be transferred to the workplace, the ALJ may discredit the claimant's allegations upon making specific findings relating to those activities."). But light exercise, shopping once a month, and engaging in limited household chores are not inconsistent with Plaintiff's statements that his condition causes back spasms that require complete rest approximately ten days per month and his medication makes him drowsy restricts him to driving short distances. *See Burrell*, 775 F.3d at 1128 (ALJ's reasoning was insufficient because he failed to explain why claimant's daily activities were inconsistent with being depressed and unable to be around other people). These activities also do not indicate "capacities that are transferable to a work setting." *Jacob P. v. Comm'r of Soc. Sec. Admin.*, No. 3:19-cv-06063-JRC, 2020 WL 5747813, at *4 (W.D. Wash. Sept. 25, 2020); *see also Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990) (finding error

where an ALJ failed to "specifically link the testimony" about the claimant's daily activities to the conclusion that the claimant's testimony lacked credibility, and made "absolutely no finding to the effect that the ability to perform those daily activities translated into the ability to perform appropriate work"). Plaintiff's activities of daily living do not provide a clear and convincing reason to reject Plaintiff's statements regarding the severity of his symptoms.

**D. The ALJ's error was not harmless.**

The Court finds that the ALJ erred in rejecting Plaintiff's testimony because the reasons given by the ALJ for doing were not clear and convincing. *See Trevizo*, 871 F.3d at 679. An ALJ's error is harmless if it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (quoting *Carmickle v. Comm'r*, 533 F.3d 1155, 1162 (9th Cir. 2008). The Vocational Expert testified at Plaintiff's hearing that if Plaintiff "would be off-task greater than 10 percent of the workday or was absent two or more days a month on a recurring basis," Plaintiff would not be able to perform his past relevant work as a courier or driver. AR 122. Given the Vocational Expert's testimony, the ALJ's rejection of Plaintiff's statements was consequential to his ultimate nondisability determination. The Court will address the proper remedy for this error below.

## V.   ISSUE NO. 2: WHETHER THE ALJ ERRED IN HIS EVALUATION OF THE MEDICAL OPINION OF DR. KELLY

Plaintiff contends the ALJ erred in evaluating the medical opinion of Dr. Michael Kelly, a chiropractor who evaluated Plaintiff in 2020 in connection with a workers' compensation claim. AR 519–38. Dr. Kelly opined that Plaintiff could not engage in work that requires repeated or prolonged neck bending. AR 537. Plaintiff argues that the ALJ erred by not incorporating a limitation regarding repeated or prolonged neck bending in the RFC, and by failing to provide a reasoned explanation for this exclusion.

Defendant contends that the ALJ determined properly that Dr. Kelly's opinion was not fully persuasive because it was limited to consideration of Plaintiff's neck condition

and did not address any other limitations. Defendant also contends that any error regarding this is harmless because Dr. Kelly's limitation is vague, and "there is no apparent conflict between a requirement for repeated or prolonged neck bending and the jobs that the ALJ found Plaintiff could perform at step four." ECF No. 13 at 17.

## A.  Legal Standard

In evaluating persuasiveness of medical opinions, an ALJ must consider the medical source opinion's supportability, its consistency, the relationship between the source and the claimant, the source's specialization, and other factors such as the source's knowledge of other evidence, social security requirements, and whether there was subsequently submitted evidence. *Woods v. Kijakazi*, 32 F.4th 785, 789 (9th Cir. 2022); 20 C.F.R. § 404.1520c(c)(1)–(c)(5). Though an ALJ may discuss each of the factors to be considered in his opinion, the regulations only require the ALJ to explain how he considered the most important factors – supportability and consistency – when determining a medical source's persuasiveness, unless two conflicting medical sources are both equally well-supported and consistent with the record. 20 C.F.R. § 404.1520c(b)(2)–(3). Supportability examines the relevant objective medical evidence and supporting explanations presented by the source. 20 C.F.R. § 404.1520c(c)(1). Consistency examines the evidence from other medical and nonmedical sources. 20 C.F.R. § 404.1520c(c)(2). An ALJ must explain his analysis of a medical opinion as persuasive or not persuasive. *Woods*, 32 F. 4th at 792 ("The agency must 'articulate ... how persuasive' it finds 'all of the medical opinions' from each doctor or other source, 20 C.F.R. § 404.1520c(b), and 'explain how [it] considered the supportability and consistency factors' in reaching these findings.") (quoting 20 C.F.R. § 404.1520c(b)).

Under the revised regulations, "an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Woods*, 32 F. 4th at 787; *see also Kitchen v. Kijakazi*, 82 F.4th 732, 739 (9th Cir. 2023) (explaining how an ALJ weighing a medical opinion must provide an explanation supported by substantial evidence, which articulates how they considered supportability and consistency); *Sloane*

*S. v. Kijakazi*, No. 21cv1043-MMA-MSB, 2023 WL 2017284, at *4 (S.D. Cal. Feb. 15, 2023). ALJs must address how they considered the consistency and supportability factors in sufficient detail to allow a reviewing court to determine whether that reasoning is supported by substantial evidence. *Titus L.S. v. Saul*, No. 20cv04825-AFM, 2021 WL 275927, at *7 (C.D. Cal. Jan. 26, 2021) (citing *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020)).

Ultimately, "an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Massey v. Kijakazi*, No. 21-35986, 2022 WL 16916366, at *1 (9th Cir. Nov. 14, 2022) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1012–13 (9th Cir. 2014)); *see also Labryssa v. Kijakazi*, No. 21cv04233-BLF, 2022 WL 2833981, at *7 (N.D. Cal. July 20, 2022) (finding a lack of substantial evidence where the ALJ failed to engage with the medical opinion "in any meaningful sense" and "made only a passing assessment" of the supportability and consistency factors).

## B. Discussion

In connection with a workers' compensation claim, Dr. Kelly opined that Plaintiff had the following permanent work restriction of "[n]o repeated or prolonged neck bending." AR 537. The ALJ found Dr. Kelly's opinion partially persuasive because it was under-restrictive. AR 39 ("The ***lack of*** any lifting and carrying restrictions is not consistent with the degree of changes on imaging of both the cervical and lumbar spine []. The ***lack of*** exertional limitations is also not consistent with the mild weakness in the right upper extremity noted by the orthopedist [].") (emphasis added) (internal citations omitted). The ALJ did find Dr. Kelly's opinion persuasive in that "no repeated or prolonged neck bending is generally consistent with limited postural maneuvers and the limited range of motion of the cervical spine." AR 39.

As an initial matter, to the extent that the ALJ's reason for not incorporating Dr. Kelly's opinion regarding neck bending into the RFC was not due to its

unpersuasiveness and was instead due to the ALJ's finding that that "Dr. Kelly is not an acceptable medical source," (AR 39), the Court is unpersuaded. For claims filed after March 27, 2017—like Plaintiff's—the Social Security Administration no longer distinguishes between an "acceptable medical source" and an "other medical source." 20 C.F.R. § 404.1520c; *see, e.g.*, *L.M. v. Kijakazi*, No. 22cv4729-VKD, 2023 WL 6308073, at *9 n.12 (N.D. Cal. Sept. 27, 2023); *Kevin C. v. Kijakazi*, No. SACV-20-1104-PVC, 2022 U.S. Dist. LEXIS 149373 *8 n.7 (C.D. Cal. Aug. 19, 2022).

To the extent that the ALJ did not incorporate Dr. Kelly's opinion regarding neck bending into the RFC because it was vague, the Court is likewise unpersuaded. First, Dr. Kelly's opinion regarding neck bending is not vague. *See Soria v. Berryhill*, No. 18cv89-SKO, 2019 WL 2448435, at *10 (E.D. Cal. June 11, 2019) ("An ALJ may not disregard a physician's medical opinion simply because it was initially elicited in workers' compensation proceedings, or because it is couched in the terminology used in such proceedings"); *Gamache v. Colvin*, No. 13cv9202-JCG, 2014 WL 5511210, at *2 (C.D. Cal. Oct. 31, 2014) (finding error when the "ALJ made no detectable effort to translate Dr. Gumbs' opinion [from workers' compensation terms] into Social Security terms, or include any correlative restrictions into Plaintiff's RFC," explaining that "[f]or workers' compensation purposes, a preclusion from 'repetitive' behavior contemplates a one-half reduction in pre-injury capacity," while "for Social Security purposes, 'frequent' means 'occurring from one-third to two-thirds of the time'"). Second, even if Dr. Kelly's opinion was vague, the ALJ did not note this in his opinion and Defendant's *post hoc* rationalizations are insufficient. *See Burrell*, 775 F.3d at 1138 ("We are constrained to review the reasons the ALJ asserts."); *see also Walker v. Comm'r of Soc. Sec. Admin.*, No. 22cv1871-EJY, 2024 WL 64784, at *4 n.4 (D. Nev. Jan. 4, 2024) ("In response to Plaintiff's motion, the Commissioner specifically addresses the supportability and consistency factors and provides citations to the record. Unfortunately these are ad hoc rationales the Court cannot consider").

By not including a neck bending limitation in the RFC, the ALJ implicitly rejected Dr. Kelly's opinion. Without explaining his reasoning,[5] this is error. *See Jennifer F. v. Comm'r of Soc. Sec. Admin.*, No. 20cv5630-JRC, 2021 U.S. Dist. LEXIS 270402, at \*4– \*7 (W.D. Wash. Feb. 26, 2021) (finding harmful error when ALJ implicitly rejected doctor's opinion, though he had found it persuasive, by failing to explain why he did not incorporate the doctor's limitation into the RFC, noting that "the ALJ's analysis of Dr. Gaffield's opinion notes the limitation of requiring a cane but provides no reason to reject this limitation. … The Court will not invent a basis for the ALJ's reasoning regarding Dr. Gaffield's opinion that the ALJ himself did not provide"); *Renteria v. Berryhill*, No. 16-cv-1612-KS, 2017 U.S. Dist. LEXIS 145891, at \*15–\*17 (C.D. Cal. Sept. 7, 2017) (finding error when ALJ implicitly rejected doctor's opinion by not including his limitations, translated from workers compensation terms to social security terms, in the RFC).

## C. The ALJ's error was not harmless

Defendant argues that neither of Plaintiff's past relevant work as a courier or driver required repeated or prolonged neck bending, so the ALJ's failure to incorporate a neck bending limitation in the RFC was harmless. ECF No. 13 at 18. Defendant quotes the descriptions of couriers and drivers and concludes that "neither of these DOT descriptions suggests that either job requires repeated or prolonged neck bending." *Id.*. The Court disagrees. It is not clear whether a limitation of neck bending would prevent Plaintiff from engaging in these occupations, as drivers or couriers often may bend or turn their neck when driving, delivering packages, or performing other duties. "Defendant's argument about these positions appears to rely on speculation and would require this Court to make findings about the requirements of these positions in the first instance. The Court declines

---

[5] Elsewhere in the ALJ's opinion, he reiterated evidence to support a neck bending restriction. *See, e.g.*, AR 36 ("The claimant was evaluated by an orthopedist and exams showed paraspinous cervical muscle tenderness with guarded neck motion and complaints of pain with extremes of motion."); AR 37 ("Extension of the head and neck reproduced pain into the right shoulder and shoulder blade.").

to do so—rather, this matter requires further factual findings by the ALJ." *Jennifer F.*, 2021 U.S. Dist. LEXIS 270402, at *7.

Defendant also argues that Dr. Kelly's vague "terms fail to set forth the frequency with which Plaintiff would bend his neck." ECF No. 13 at 19. This is not accurate. Dr. Kelly opined that Plaintiff was limited to "[n]o repeated or prolonged neck bending." AR 537. For example, "[n]umerous cases from within the Ninth Circuit have found that the term 'repetitive' is a 'term of art' in the California Workers' Compensation scheme indicating a 50% loss of function and held that the ALJ must address and incorporate the meaning of the term 'repetitive' in a Social Security disability opinion." *Renteria*, 2017 U.S. Dist. LEXIS 145891, at *16–*17 (collecting cases); *see also Gamache*, 2014 WL 5511210, at *2 ("[f]or workers' compensation purposes, a preclusion from 'repetitive' behavior contemplates a one-half reduction in pre-injury capacity," while "for Social Security purposes, 'frequent' means 'occurring from one-third to two-thirds of the time'"). Similarly, though the term "prolonged" is "not defined in the [Social Security DOT] Schedule," it has been reasonably interpreted to mean "half of the workday" in the workers' compensation context. *Booth v. Barnhart*, 181 F. Supp. 2d 1099, 1108 (C.D. Cal. Jan. 22, 2002); *see, e.g.*, *De La Barcena v. Colvin*, No. 12cv10785-AN, 2013 WL 5924563, at *2 (C.D. Cal. Nov. 1, 2023) (noting that prolonged has been interpreted as half of the workday, and finding that "the ALJ erred by failing to explain why the RFC assessment did not reflect Dr. Pechman's finding that Plaintiff is precluded from prolonged standing and walking. … Nor did the ALJ address any pertinent distinctions between the use of the term 'prolonged standing/walking' in a workers' compensation case as opposed to a Social Security disability case").

As such, the Court finds that the error is not harmless. *See, e.g.*, *Renteria*, 2017 U.S. Dist. LEXIS 145891, at *15–*17 (finding harmful error when the ALJ "assigned significant weight to Dr. Halbridge's opinion, but he discounted, without addressing, Dr. Halbridge's opinion that Plaintiff should not do repetitive work at or above shoulder level" when he concluded that claimant could perform four jobs that involve frequent reaching);

*Gamache*, 2014 WL 5511210, at *1–*2 (finding harmful error when ALJ did not properly translate the opinion from workers' compensation terms to Social Security terms or reject the opinion, when opinion precluded repetitive grasping and RFC limited claimant to frequent handling). It is not clear what effect incorporating Dr. Kelly's neck bending limitations into the RFC would have. When "the ALJ did not provide enough 'reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence,' we cannot treat the error as harmless." *Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020) (quoting *Treichler*, 775 F.3d at 1103).

## VI.   <u>THE PROPER REMEDY</u>

The only remaining question for the Court is whether to remand for further administrative proceedings or for the payment of benefits. "The decision of whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court." *Trevizo*, 871 F.3d at 682 (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)); *Garrison*, 759 F.3d at 1019. "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).

The Court applies the "credit-as-true" rule when determining whether a case should be remanded for payment of benefits or for further proceedings. *Trevizo*, 871 F.3d at 682. That test requires the court to assess three factors: (1) whether "the record has been fully developed and further administrative proceedings would serve no useful purpose;" (2) whether "the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion;" and (3) whether "the ALJ would be required to find the claimant disabled on remand" if the discredited evidence were treated as true. *Id.* at 683 (quoting *Garrison*, 759 F.3d at 1020). If all three factors are present, a court can remand the case for payment of benefits. *Burrell*, 775 F.3d at 1141.

Here, as explained above, the Court finds that the ALJ committed reversible error by rejecting Plaintiff's testimony without providing specific, clear, and convincing reasons for doing so, and by implicitly rejecting Dr. Kelly's opinion without providing reasons

supported by substantial evidence. The Court will therefore focus its discussion on the first and third factors of the credit-as-true analysis.

In his opinion, the ALJ wrongly discredited Plaintiff's testimony that "[h]is medication caused drowsiness and dizziness so he could not drive a commercial vehicle." AR 35 (citing AR 353). If Plaintiff's testimony were treated as true, he would not be able to perform his past relevant work insofar as it required driving. *See* AR 353 (Plaintiff's Function Report, "the pain medication causes drowsiness and dizziness that prevents me from driving a commercial vehicle"); AR 115 (Plaintiff's hearing testimony, "I'll drive somewhere short because, you know, like I don't want to be behind the wheel too long because I done caught myself falling asleep a few times. God bless I didn't hurt nobody or hurt myself."); *see, e.g.*, AR 436 ("he does not use the pain medication while driving") AR 541 (same); AR 548 (same); AR 555 (same); AR 562 (same); AR 575 (same).

Plaintiff's past relevant work as a courier and driver was actually performed by driving. AR 107–08 (Plaintiff's hearing testimony that as a courier, "I drove my personal vehicle [] and picked up specimens from doctors and locked boxes and took them to a laboratory or hospital to get them processed."); AR 108–09 (Plaintiff's hearing testimony that "I was a driver … I was taking men on base … dropping them off and picking them up just like a[n] Uber driver"). As its name suggests, as generally performed, the DOT describes a driver/chauffeur as someone who "drives private car as ordered by owner or other passenger and performs other miscellaneous duties." DOT 359.673-020, 1991 WL 672966 (Jan. 1, 2016). However, it is unclear if working as a courier requires driving as generally performed. *See* DOT 230.663-010, 1991 WL 672160 (Jan. 1, 2016) ("Delivers messages, telegrams, documents, packages, and other items to business establishments and private homes, *traveling on foot or by bicycle*,[6] motorcycle, automobile, or public

---

[6] If Plaintiff's other statements were also credited as true—such as that he can only stand for a minute or two or that he needs to change positions every two minutes (AR 38, 116)—he would likely not be able work as a courier via walking or riding a bicycle either.

conveyance.") (emphasis added). During the hearing, the vocational expert did not expound on whether working as a courier requires driving as generally performed.

However, during the hearing, Plaintiff asked the vocational expert if a person "taking four Norcos a day that has to take a break off for a week, is there a job that you think I could be hired?" AR 121. The ALJ translated Plaintiff's question to the vocational expert as follows:

> Q:      …if the hypothetical individual for either hypos one or two, in addition to the other limitations, would be off-task greater than 10 percent of the workday or was absent two or more days a month on a recurring basis, for whatever reason, if I added either an off-task or an absent limitation such as those, would that preclude all work in your opinion?

> A:      In my opinion it would. Both of them would eliminate all work.

AR 122. As such, it is clear that Plaintiff's statement of a person "taking four Norcos a day"—and thus experiencing symptoms of drowsiness and dizziness—was translated by the ALJ to being off task greater than 10 percent of the workday. Thus, even if Plaintiff's courier position could be performed without driving, the vocational expert made clear during the hearing that Plaintiff would not be able to perform his past relevant work had his symptoms been credited as true. As such, further administrative proceedings regarding step four would serve no useful purpose.

The Court also finds that further administrative proceedings regarding step five would not be useful. Born on November 20, 1956, Plaintiff was 60 years old on his alleged disability onset date of June 18, 2017, and was 64 years old when he filed his application for Supplemental Security Income on February 18, 2021. The Social Security Administration's regulations state that:

> If you are of advanced age (age 55 or older), and you have a severe impairment(s) that limits you to sedentary or light work, we will find that you cannot make an adjustment to other work unless you have skills that you can transfer to other skilled or semiskilled work (or you have recently completed education which provides for direct entry into skilled work) that you can do despite your impairment(s). We will decide if you have transferable skills as

follows. … If you are closely approaching retirement age (age 60 or older) and you have a severe impairment(s) that limits you to no more than light work, we will find that you have skills that are transferable to skilled or semiskilled light work only if the light work is so similar to your previous work that you would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry.

20 C.F.R. § 404.1568(d)(4); *see* 20 CFR § 404.1563(e). Here, the Vocational Expert testified at the hearing that:

> Q:    Would there be any transferable skills, certainly not from the courier as it's unskilled, but from the driver position or the van driver position?
>
> A:    I don't believe so, Your Honor.

AR 121. Thus, it is apparent that Plaintiff—who is closely approaching retirement age, limited to light work, and has no transferable skills—would be found disabled if the ALJ had proceeded to step five. *Terry v. Sullivan*, 903 F.2d 1273, 1275–76 (9th Cir. 1990) ("it is not enough that persons of advanced age are capable of doing unskilled work; to be not disabled, they must have acquired skills from their past work that are transferable to skilled or semiskilled work.") (internal citations omitted); *Kenneth M. C. v. Berryhill*, No. 17cv1881-JR, 2018 WL 6003858, at *6 (D. Or. Nov. 15, 2018) (remanding for payment of benefits). Further, as to his past work as an unskilled courier, (AR 118), "skills are not transferable to unskilled work because, by definition, unskilled work requires no skills. [] Thus, the [Commissioner] cannot meet his burden [at step five] by identifying unskilled jobs that [Plaintiff] is capable of performing." *Terry*, 903 F.2d at 1277 (remanding for payment of benefits).

Here, it is clear from the current record "that the ALJ would be required to award benefits if [Plaintiff's] … testimony were credited," the record is fully developed, and there is no need for further delays. *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1401 (9th Cir. 1988). As the Ninth Circuit has stated, "[a]llowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system

23

3:23-cv-00563-AHG

of disability benefits adjudication." *Benecke*, 379 F.3d at 595 (quoting *Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004)). "Application of the credit-as-true rule here serves the purpose of the rule by encouraging ALJs to comply with Ninth Circuit standards for evaluating claimant testimony in the future, rather than giving them a 'do-over' that will only result in inequitable delays." *Renee S. v. O'Malley*, No. 23cv480-AHG, 2024 U.S. Dist. LEXIS 53087, at *28 (S.D. Cal. Mar. 25, 2024).

Therefore, weighing the applicable factors, the Court finds the appropriate remedy here is to reverse the Commissioner's decision and remand for an immediate award of benefits.

## VII.  **CONCLUSION**

The Court finds that the ALJ committed reversible error by rejecting Plaintiff's testimony without providing specific, clear, and convincing reasons for doing so, and by implicitly rejecting Dr. Kelly's opinion without providing reasons supported by substantial evidence.

Based on the foregoing analysis, the Court resolves the parties' Joint Motion for Judicial Review (ECF No. 13) in Plaintiff's favor. The Court hereby **REVERSES** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g), and **REMANDS** this action for calculation and award of benefits to Plaintiff.

The Clerk is directed to **CLOSE** this case.

**IT IS SO ORDERED.**

Dated:  March 29, 2024

_____
Honorable Allison H. Goddard
United States Magistrate Judge

3:23-cv-00563-AHG